```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ARACELIZ MARRERO,                                                :
                                                                 :
                    Plaintiff,                                   :         OPINION
                                                                 :
         -against-                                               :         20-CV-10241 (KHP)
                                                                 :
COMMISSIONER OF SOCIAL SECURITY,                                 :
                                                                 :
                    Defendant.                                   :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/15/2022

**KATHARINE H. PARKER, United States Magistrate Judge**:

Plaintiff Araceliz Marrero, ("Plaintiff"), represented by counsel, commenced this action against Defendant, Commissioner of the Social Security Administration (the "Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff seeks review of the Commissioner's decision that she was not disabled from September 15, 2017, the onset date of her alleged disability, through the date of the decision, April 29, 2020.

For the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS the Commissioner's motion for judgment on the pleadings.

## BACKGROUND

Plaintiff, born in 1979, obtained her associates degree in business management and previously worked as an executive assistant and legal assistant before her alleged disability. (A.R. 38, 58.) In an unfortunate accident, in February 2017, Plaintiff slipped and fell on black ice causing injuries to her right ankle and foot. (A.R. 39.) In July 2019, Plaintiff was in a car accident that exacerbated her initial injuries and caused new injuries to her knee, back, and neck. (A.R. 1553.) Plaintiff suffers from right ankle injuries and post-osteochondral autograft from the right knee to the right talus, and the following non-severe impairments: traumatic

sprain of the sacroiliac joint complex; post-traumatic headaches; traumatic sprain of the cervical, thoracic and lumbar ligaments; stomach disorders, endometriosis, and depressive and anxiety disorders.[1]  (A.R. 13.)  After filing her application for disability benefits, Plaintiff and her family moved to Florida.  (A.R. 70, 592.)

1. *Procedural History*

On January 24, 2019, Plaintiff filed an application for Social Security Disability ("SSD") insurance benefits alleging disability due to the physical impairments referenced above.  (A.R. 218-20.)  Plaintiff's claims were denied after initial review on April 22, 2019, and again on reconsideration on August 1, 2019.  (A.R. 85, 100.)  At Plaintiff's request, a hearing before Administrative Law Judge ("ALJ") John Carlton was held on January 16, 2020 via videoconference.  (*Id.*)  Plaintiff appeared with counsel and testified at the hearing.  (*Id.*)  On April 29, 2020, ALJ Carlton denied Plaintiff's application.  (A.R. 19.)  Plaintiff appealed, and on November 20, 2020, the Appeals Council denied Plaintiff's appeal, making the ALJ's decision the Commissioner's final act.  (A.R. 1.)  Plaintiff's date last insured is December 31, 2022.  (A.R. 12.)

Plaintiff commenced this action on December 4, 2020, asserting that the ALJ erred in determining that Plaintiff could perform a full range of sedentary work and failed to properly develop the record in formulating Plaintiff's residual functional capacity ("RFC").  (ECF Nos. 1, 33.)  Pursuant to this Court's order dated December 7, 2020, (ECF No. 8), the parties submitted a joint stipulation in lieu of Motion for Judgment on the Pleadings.  (ECF No. 33.)

---

[1] Plaintiff does not appeal the Commissioner's decision regarding her alleged mental impairments.  Thus, the Court does not address them below.

   2. *Summary of Relevant Medical Evidence*

      a. *Treatment History*

After Plaintiff's fall on February 13, 2017, she was transported to the hospital by ambulance. (A.R. 305). No fracture or dislocation was identified upon x-ray of her right ankle, but her ankle was swollen. (A.R. 303, 314.) Similarly, no fracture or dislocation was identified after an x-ray was taken of her right foot. (A.R. 304.) Plaintiff also reported back pain. (A.R. 305.) Plaintiff was assessed and found to have sprained her ankle and foot. She was provided with an air cast and crutches. (A.R. 306.)

Medical records dated February 16, 2017 to February 24, 2017 note positive findings of antalgic gait with pain; tenderness on the anterior talo-fibular ligament ("ATFL") and midfoot as well as tenderness of the fibula. X-rays of Plaintiff's right lower extremity were negative for fracture. (A.R. 341-51.) An MRI of the right ankle, taken on April 10, 2017, revealed a 6 mm chronic osteochondral lesion of the medial talar dome; moderate grade articular cartilage thinning, low-grade sprain of the calcaneofibular ligament, and small posterior subtalar joint effusion. (A.R. 354-55.)

On September 25, 2017, Plaintiff underwent surgery performed by orthopedic surgeon Dr. Chaiyaporn Kulsakdinun for debridement, right ankle ligament repair, bone osteotomy, osteochondral lesion repair with cartilage transfer from right knee. (A.R. 356-82.) At the time, Plaintiff was working and was not using an ambulatory aid. Her medical provider found that she had 5/5 strength and full range of motion despite a positive right ankle anterior drawer test. (A.R. 363-64.) On October 3, 2017, following the surgery, Plaintiff's doctor applied a cast

to Plaintiff's right lower leg.  (A.R. 356-82.)  On the same day, Plaintiff complained of pain and throbbing in her ankle and foot.  (A.R. 378.)

Medical records from Dr. Kulsakdinun dated July 12, 2017 to October 11, 2017 noted that Plaintiff had a right ankle injury with a ligament tear as well as a medial osteochondral defect for which he recommended lidocaine cortisone injection, physical therapy and bracing.  (A.R. 361.)  From October 3, 2017 to June 12, 2018, Dr. Kulsakdinun diagnosed Plaintiff with osteochondral defect of the ankle and documented Plaintiff's ongoing treatment for right ankle injury, status-post surgery.  (*See, e.g.,* A.R. 722-39.)  Throughout this period, Plaintiff continued to have swelling in her right ankle and complained of pain and throbbing in her ankle and foot.  (A.R. 429.)  In January 2018, Dr. Kulsakdinun reported that Plaintiff's surgical wounds were healing well and that she had normal sensation and active extension and flexion of her ankle and toes.  (A.R. 865.)  Plaintiff reported mild pain on palpation, and there was some pain at her Achilles tendon, but no pain on ranges of motion.  (*Id.*)  In February 2018, Plaintiff was ambulating wearing an ankle brace, and she was not using an assistive device.  (A.R. 881.)  She had active range of motion without pain, but she had some diminished strength with 3+/5 of dorsiflexion, and 4-/5 of plantar flexion.  (A.R. 863.)  Her sensation was intact.  (*Id.*)

On June 12, 2018, a physical examination revealed tenderness to palpation medially at the ankle laterally and pain on extremes of all ankle range of motion.  (A.R. 396-444; 863-1173.)  After continuing to endure pain, Plaintiff requested removal of the hardware that had been installed in her prior surgery (tubular plate and screws).  (A.R. 435-38.)  A right ankle x-ray in June 2018 revealed intact hardware alignment that was unchanged.  (A.R. 444.)  Plaintiff underwent hardware removal surgery on June 25, 2018.  (A.R. 445-540; 863-1173; 1174-1484).

Dr. Kulsakdinun's treatment notes from July 10, 2018 to September 12, 2018 state that Plaintiff's symptoms had improved but that she had developed increased laxity on her ankle. (A.R. 586, 1085-1110; 1174-1484.)  In addition, Dr. Kulsakdinun reported that Plaintiff was in no distress.  (A.R. 1100.)  She had intact sensation, active range of motion, and her motor strength was 5/5.  (A.R. 1100-01.)  An MRI taken on September 12, 2018 showed enlargement of the posterior tibial tendon with fluid tracking along the tendon sheath; thickening of the ATFL consistent with chronic injury; severe thickening with abnormal signal in the deltoid ligament consistent with severe sprain; and high-grade partial tearing of the SM-CNL at its navicular attachment.  (A.R. 609, 621.)

Plaintiff commenced physical therapy with Wakefield Physical Therapy in or about November 10, 2017.  At that time, her initial assessment revealed lower extremity range of motion deficits; decreased right lower extremity hip and knee active range of motion; inversion and eversion grossly limited by greater than 70%; muscle strength in the right hip flexion, abduction, and adduction at 3/5 and extension at 3-/5; right knee strength deficits of 3/5 in extension and flexion; right ankle deficits of 3-/5 in plantarflexion and dorsiflexion, 2+/5 in subtalar inversion and subtalar eversion, and 3/5 in interphalangeal flexion of toes.  (A.R. 635-53.)  From December 2017 through April 2018, Plaintiff used a Camwalker (i.e., walking boot) or a brace, and no assistive device.  (A.R. 687, 753, 769, 778, 801, 813, 829.)  Plaintiff's physical therapy notes from February through April 2018 reflect that she ambulated without use of an aid.  (A.R. 889, 918, 935).  Physical therapy treatment notes dated March 23, 2018 indicate that Plaintiff had tenderness to palpation over the medial and lateral patella; anterior knee pain with squatting; and evidence of right knee patellofemoral overload syndrome status post

5

osteochondral autograft transfer from the right knee to the right talus. (A.R. 823.) Plaintiff stopped physical therapy on or about April 12, 2018. (A.R. 837.)

On July 25, 2019, podiatrist Dr. Sheldon Siegel assessed Plaintiff and noted she suffered from osteochondral defect of the talus; chronic ankle instability; muscle contracture; contracture of the hamstring; acquired equinus deformity of the foot, and sinus tarsi syndrome of the right ankle. (A.R. 1537.) However, an x-ray of Plaintiff's ankle showed benign findings. (*Id.*)

On August 7, 2018, Plaintiff complained of diarrhea, abdominal cramping, and diminished appetite, with a weight loss of 12 pounds; as well as episodes of bloody/tarry stools. (A.R. 558.) Her provider referred her to gastroenterology to undergo a colonoscopy. (A.R. 559.) On November 16, 2018, she saw gastroenterologist Dr. Scott Suchin, who noted that Plaintiff complained of one month of abdominal pain, diarrhea, weight loss of 40 pounds and blood in her stool. (A.R. 1420-21.) On December 19, 2018, an endoscopy revealed a small hiatal hernia. (A.R.850-52.) Plaintiff's provider recommended she follow an anti-reflux regimen. (*Id.*) On December 20, 2018, Plaintiff had a colonoscopy, which revealed Plaintiff had hemorrhoids. (A.R. 857.) No other adverse findings were noted.

        *b. Medical Opinions*

On December 20, 2018, Dr. Sean Thompson, an orthopedic surgeon, evaluated Plaintiff's right ankle. (A.R. 1642.) He noted that Plaintiff was ambulating with a slight limp and using a cane; was able to get on and off the examining table without difficulty and moved freely during the examination; and drove to the examination. (A.R. 1645.) He further noted that Plaintiff's right ankle was not tender, her anterior drawer sign was negative, and sensation was

intact to light touch. (*Id.*) Dr. Thompson assessed that Plaintiff's right ankle sprain had resolved. (*Id.*) In his opinion, Plaintiff had suffered a right ankle sprain after a slip and fall with no evidence of an osteochondral or ligamentous injury. (A.R. 1646.) Dr. Thompson opined that Plaintiff was able to resume full usual work activities and that no further treatment was necessary. (*Id.*)

On March 7, 2019, Dr. Kulsakdinun reported that Plaintiff was in no distress, sensation was intact, her calves were soft and nontender, she had active range of motion in her ankle, and her anterior drawer sign and inversion stress testing were equivocal. (A.R. 1488.) He stated that Plaintiff could return to work with strict sedentary restrictions, despite noting she still experienced pain and swelling in her ankle and complained of instability. (A.R. 1486-89.)

In a report dated April 1, 2019, consultative examiner Dr. Ann Marie Finegan noted that Plaintiff had an antalgic gait and utilized a cane, which Dr. Finegan deemed necessary. (A.R. 1497.) Dr. Finegan also noted that although Plaintiff appeared more confident with a cane, her use of the cane did not speed up her gait. (*Id.*) Dr. Finegan reported Plaintiff appeared to be in no acute distress. (*Id.*) Her gait was abnormal, as she was limping on her right side and using a cane. (*Id.*) Plaintiff was able to walk on her heels and toes on the right, but she reported pain in her right knee and ankle. (*Id.*) She could complete one quarter of a squat. (*Id.*) Plaintiff did not need any help changing for the examination, she got on and off the examining table without difficulty and she rose from a chair without difficulty. (*Id.*)

Dr. Finegan found that Plaintiff had full range of motion in her lumbar and thoracic spine, no tenderness or spasm, and that her straight leg examination was normal. (*Id.*) Dr. Finegan found Plaintiff had full range of motion in her knees, but some effusion on the right

7

knee. (*Id.*) There was no tenderness or instability, however. (*Id.*) Plaintiff had mild tenderness of her right ankle, and she had limited and uncomfortable subtalar movements, but she had full dorsiflexion and plantar flexion and no instability. (A.R. 1498.) Plaintiff also had 5/5 strength in her right extremity. (*Id.*) There were no signs of muscle atrophy or sensory abnormality, and her reflexes were physiologic and equal. (*Id.*) Right knee x-rays showed no acute findings, and low back x-rays showed degenerative joint disease. (*Id.*)

Dr. Finegan diagnosed Plaintiff with right knee chondromalacia patella; a mood disorder; and low back pain of unclear etiology. (*Id.*) Dr. Finegan also noted that Plaintiff may suffer from peroneal tendinitis in her right ankle but was unable to confirm the diagnosis. (*Id.*) She then opined that Plaintiff has mild to moderate limitation in prolonged standing and in the ability to kneel, crouch, crawl, balance, and climb stairs. (*Id.*) She further opined that Plaintiff should not use her right foot to operate foot controls or perform activities at unguarded heights or around dangerous or moving machinery. (*Id.*)

On April 15, 2019, State agency medical expert R. Uppal, D.O. reviewed Plaintiff's case record and concluded that Plaintiff could occasionally lift up to 20 pounds and frequently lift up to 10 pounds. He found that in an eight-hour day, Plaintiff could stand and/or walk 2 hours and sit 6 hours; could occasionally climb ramps, stairs, ladders, ropes or scaffolds; had unlimited abilities to balance, stoop, and kneel; and could occasionally crouch and crawl. (A.R. 79-80). On July 30, 2019, State agency medical expert Dr. Vinluan reviewed Plaintiff's case record and confirmed Dr. Uppal's findings. (A.R. 94-96.)

### 3. *The Administrative Hearing*

At the Administrative Hearing on January 16, 2020, Plaintiff testified that she stopped working in September 2017 due to her slip and fall accident in February 2017. (A.R. 39.) According to Plaintiff, her September 2017 surgery was unsuccessful, and her ankle would become "very swollen and painful" if she walked or stood for too long. (A.R. 40.) Plaintiff decided to undergo a second surgery to remove the hardware because her entire foot would turn purple and become swollen. (A.R. 41-42.) She testified that after the surgeries, her right ankle still remained larger than her left ankle. (A.R. 43.) She stated her leg would often flare up from simple tasks such as washing dishes or walking around her home. (*Id.*) Plaintiff testified that she began using a cane after her first surgery in 2017. (A.R. 51.) She utilizes a foldable cane that she keeps in her purse for use when she deems it necessary. (A.R. 51-52, 63.)

Plaintiff testified she was being treated by Dr. Gibbs, a chiropractor, for injuries stemming from her July 2019 car accident, which included two herniated discs, two levels of scoliosis, and right knee and arm pain. (A.R. 47.) ALJ Carlton asked Plaintiff why she had not gone to see a doctor other than a chiropractor given the extent of her alleged injuries from the car accident. Plaintiff responded it was because of insurance issues after relocating to Florida and because of the lack of available appointments in New York. (A.R. 66-67.) Plaintiff admitted to not visiting her primary care physician or an urgent care facility for treatment after the car accident. (A.R. 67-68.) There are no images such as X-rays or MRIs showing any specific injuries to Plaintiff's spine, knee or arm.

Due to pain in her arm, Plaintiff testified that she finds it difficult to carry a gallon of milk and cannot lift her right arm above her chin. (A.R. 63, 65.) Due to her overall injuries, Plaintiff testified that she has trouble sleeping, must remain indoors most of the time, uses a cane, cannot go shopping, cook or clean, and has become clumsy. (A.R. 47-48, 57.) She stated she spends a lot of time in bed and sometimes relies on her fiancé to put her socks on for her. (A.R. 49.) Plaintiff also testified that she hasn't really driven since her foot surgery and relocating to Florida because of the pain and discomfort. (A.R. 58.)

### 4. *The Commissioner's Decision*

ALJ Carlton found that Plaintiff has not engaged in substantial gainful activity since the onset of her alleged disability and that she had severe impairments from her right ankle injuries and post-osteochondral autograft from the right knee to the right talus. (A.R. 13.) The ALJ also found the following non-severe impairments: traumatic sprain of the sacroiliac joint complex; post-traumatic headaches; traumatic sprain of the cervical, thoracic and lumbar ligaments; stomach disorders, endometriosis, and depressive and anxiety disorders. (A.R. 13-14.) The ALJ concluded that Plaintiff's severe impairments singularly or in combination did not meet the Listings. (A.R. 14.) In light of the evidence in the record, ALJ Carlton found that Plaintiff had the RFC to perform the full range of sedentary work. (A.R. 15.)

The ALJ also noted that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent with the medical evidence. (A.R. 17.) ALJ Carlton based his decision on the fact that the longitudinal treatment record reflected moderate findings, mostly stable symptoms, and adequate physiologic functioning, despite musculoskeletal impairments and ankle surgeries. (*Id.*) The ALJ noted

Plaintiff's treatment was fairly routine and conservative and Plaintiff's daily activities supported that Plaintiff could perform sedentary work. (*Id.*)

As to the medical opinion evidence, the ALJ found the opinion of orthopedic surgeon, Dr. Thompson, to be persuasive. (*Id.*) Dr. Thompson opined that there was no evidence of osteochondral injury or ligamentous injury from Plaintiff's fall, that no further treatment for her ankle was needed, and that Plaintiff was able to resume full usual work for activity. (*Id.*) The ALJ found the opinions of state medical consultants Drs. Vinluan and Uppal and consultative examiner Dr. Finegan to be somewhat persuasive. (A.R. 18.) Specifically, based on Plaintiff's hearing testimony, the ALJ found Plaintiff to have greater limitations than those physicians reported. Accordingly, he found that Plaintiff had more limitations due to the foot injuries and gait issues that would not allow her to occasionally lift twenty pounds or frequently lift ten pounds (that is, disqualifying her from light work). (*Id.*) The ALJ also found the opinion of Dr. Kulsakdinun somewhat persuasive insofar that the determination of disability is reserved to the Commissioner.

The ALJ determined that there are jobs in significant numbers in the national economy that Plaintiff can perform because Plaintiff can perform the full range of sedentary work. (A.R. 19.) Accordingly, ALJ Carlton found Plaintiff is not disabled pursuant to SSR 83-11 and Medical-Vocational Rule 201.28. (*Id.*)

## DISCUSSION

### 1. Standard of Review

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the

record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *id*. § 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g)[.]").

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*) (internal quotation marks and citation omitted).

2. *Analysis*

   a. **The ALJ Fully Developed the Record**

As a threshold matter, the "court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Intonato v. Colvin*, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (*quoting Scott v. Astrue,* 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)).  In this case, after a careful review, the Court finds that ALJ Carlton properly developed the record.  There are no apparent gaps in the record and the ALJ held open the record after the hearing so that Plaintiff could submit additional evidence after the hearing.  (A.R. 34.)

Plaintiff asserts that the ALJ failed to fully develop the record regarding her RFC, arguing that the ALJ relied on a stale medical opinion from December 20, 2018 that is limited to her right ankle injuries and their impact on her.

In order to consider a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, but there must also exist subsequent treatment notes indicating that the claimant's condition had deteriorated over that period. *Cepeda v. Comm'r of Soc. Sec.*, 2020 WL 6895256, at *10 (S.D.N.Y. Nov. 24, 2020) (citation omitted). Thus, even a "dated" opinion will not be deemed stale, and may constitute substantial evidence, if it is consistent with the record as a whole and there is no evidence of an intervening event such as a new injury or significant deterioration. *Id.* (citations omitted).

Of note, Plaintiff has not identified any evidence indicating she suffered other significant impairments or a new condition that would have led to greater restrictions regarding her RFC. To the extent Plaintiff argues that the July 2019 car accident significantly exacerbated her injuries, this argument is without merit, because she testified that she only saw a chiropractor for her injuries and did not make an appointment to see her primary care physician or seek treatment at an urgent care facility. Indeed, Plaintiff does not argue the ALJ erred in finding her other complaints to be non-severe. Additionally, no medical scans or reports show injuries to other parts of her body from the car accident that would impact her ability to do sedentary work. (A.R. 67-68; 1537.)

Further, the record overall record is consistent in reflecting that Plaintiff had some tenderness and instability of her ankle at times, but also improved stability with treatment,

good strength, and active ranges of motion.  Notably, several doctors indicated she could perform sedentary work or return to work, notwithstanding her complaints about her ankle.

Thus, the ALJ properly relied on the existing opinion evidence and administrative medical findings in support of the RFC determination and did not fail to develop the record. *See, e.g.*, *Starr v. Comm'r of Soc. Sec.*, 2022 WL 220408, at *6 (S.D.N.Y. Jan. 26, 2022) (finding the record did not indicate a deterioration in Plaintiff's condition so substantial as to render the records on which the ALJ relied incomplete or insufficient; rather the claimant's limitations in the months and years following the consultant's opinion were substantially similar to the limitations and findings articulated in the consultant's opinion) (internal citation and quotation marks omitted); *Santiago v. Comm'r of Soc. Sec.*, 2020 WL 1922363, at *6 (S.D.N.Y. Apr. 21, 2020) (ALJ's reliance on independent medical examinations was proper where opinion was rendered prior to the plaintiff's two surgeries, where there was evidence of some deterioration, but not significant deterioration, or new injury after the doctors rendered their opinions).

### b. The ALJ's Sedentary RFC Is Supported by Substantial Evidence

Plaintiff argues that the ALJ's determination that Plaintiff can engage in the full range of sedentary work is not supported by substantial evidence in light of the treatment notes in the record.  "An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ[.]"  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527(d)(2)).  The ALJ, as the fact-finder, is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's RFC determination need not

perfectly correspond with any medical opinion.  *Id.*  In arriving at a decision on disability, the Commissioner must consider several factors including the supportability and consistency of medical opinions contained in the record.  *See Herrera v. Comm'r of Soc. Sec.*, 2021 WL 4909955, at *6 (S.D.N.Y. Oct. 21, 2021) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

At steps one through four of the Commissioner's assessment of disability, including the evidence used to support an RFC determination, it is the claimant who bears the burden to show that he or she is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Colgan v. Kijakazi*, 22 F.4th 353, 358 (2d Cir. 2022) (citation omitted).

Here, Plaintiff fails to carry her burden as no opining doctor found that she could not engage in sedentary work or was even further limited.  Plaintiff only points to treatment notes where she is noted to have an antalgic gait with pain (A.R. 341-51), had a ligament tear (A.R. 361), MRI results indicating a lesion and sprain of ligaments in the right ankle (A.R. 352-55), reduced range of motion (A.R. 635-53), complaints of pain and swelling of the right ankle and foot, and two ankle surgeries (A.R. 435-38).  Plaintiff also indicates that she saw Dr. Suchin for abdominal issues, but those were short term and treated conservatively.  (*See* A.R. 558-59, 850-57.)  Although the records show that Plaintiff saw various doctors for various injuries and complaints, none show that she was unable to perform the requirements of sedentary work.

In fact, the physicians who rendered opinions either noted that Plaintiff could engage in sedentary work or only had mild to moderate limitations in her mobility.  Dr. Kulsakdinun, Plaintiff's *own* treating physician and orthopedic surgeon, opined Plaintiff could return to work with strict sedentary restrictions, despite noting she still experienced pain and swelling in the ankle and complained that she felt unstable.  (A.R. 1486-89) (emphasis added).  Dr. Thompson,

15

an orthopedic surgeon who evaluated Plaintiff's right ankle opined that Plaintiff was able to resume full usual work activities and that no further treatment was necessary. (A.R. 1646.) Dr. Finegan opined that Plaintiff has mild to moderate limitation in prolonged standing and in the ability to kneel, crouch, crawl, balance, and climb stairs. (A.R. 1498.) This opinion, however, does not preclude sedentary work. Lastly, state agency medical experts, Drs. Uppal and Vinluan concluded that Plaintiff could stand and/or walk for two hours and sit for six hours; and that she could occasionally climb ramps, stairs, ladders, ropes or scaffolds, had unlimited abilities to balance, stoop, and kneel, and could occasionally crouch and crawl. (A.R. 79-80; 94-96.)

Plaintiff's claims are similar to those raised by the plaintiff in *Ramos v. Berryhill*, who alleged he was disabled and suffered injury to his knee and ankle after he slipped and fell while exiting an elevator. 395 F. Supp. 3d 329, 333 (S.D.N.Y. 2019). There, the court affirmed the ALJ's decision that the plaintiff could engage in sedentary work where imaging showed no abnormalities and medical opinions supported sedentary work, despite subjective complaints of pain. *Id.* at 342-43.

To the extent Plaintiff asserts that the ALJ should have given greater consideration to her use of a cane, it is without merit. Plaintiff admitted that she did not use her cane all of the time and would often have it folded in her bag. (A.R. 51-52, 63.) Medical treatment notes from various appointment also indicate that Plaintiff did not not use/need an assistive device. (*See* A.R. 687, 753, 769, 778, 801, 813, 829.) In any event, use of a cane on occasion is not inconsistent with sedentary work. *See Stover v. Saul*, 2020 WL 897411, at *5 (W.D.N.Y. Feb. 25, 2020) ("the use of a cane or walker to aid in ambulation is not inconsistent with an RFC of

sedentary work"). Thus, on balance, ALJ Carlton was not obligated to consider Plaintiff's need for an ambulatory assistive device, and not incorporating the same in his RFC determination does not constitute legal error. *See Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, at *9 (N.D.N.Y. Mar. 30, 2021) ("The fact that at times, plaintiff may have used a cane or assistive device, does not indicate that such a device was medically necessary. An observation that plaintiff used such a device, even by medical personnel is not enough.") (citation omitted); *see also Gutierrez v. Comm'r of Soc. Sec.*, 2022 WL 2116718, at *9 (S.D.N.Y. June 13, 2022); *Joey A. v. Comm'r of Soc. Sec.*, 2022 WL 855584, at *13 (D. Conn. Mar. 23, 2022); *Karen W. v. Comm'r of Soc. Sec.*, 2021 WL 4316557, at *8 (W.D.N.Y. Sept. 23, 2021).

Accordingly, in light of the overall evidence in the record, ALJ Carlton's decision that Plaintiff could engage in sedentary work is supported by substantial evidence. *See Bishop v. Comm'r of Soc. Sec.*, 2022 WL 2316134, at *1 (E.D.N.Y. June 28, 2022) (finding that Plaintiff could engage in sedentary work based on a medical opinion despite severe impairments including osteoarthritis of the right ankle and avulsion injury to the left ankle). There is no reason to disturb the ALJ's decision as it "is not the function of this Court to re-weigh evidence or consider *de novo* whether Plaintiff is disabled." *Michele B. v. Comm'r of Soc. Sec.*, 2021 WL 5543940, at *7 (W.D.N.Y. Nov. 27, 2021).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is DENIED, and Defendant's motion for judgment on the pleadings is GRANTED.

**SO ORDERED.**

Dated: August 15, 2022
      New York, New York

*Katharine H. Parker*

KATHARINE H. PARKER
United States Magistrate Judge